IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KEVIN H.**[1], | Case No. 3:22-cv-501-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Lisa R. Lang, JOHNSTON PORTER LAW OFFICE PC, 5200 SW Meadows Rd., Suite 150, Lake Oswego, OR 97035. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Noah Schabacker, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 1961 Stout Street, Suite 4169, Denver, CO 80294. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Kevin H. appeals the final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for Disability Insurance Benefits

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

(DIB) under Title II of the Social Security Act (Act). The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). As explained below, the Court affirms the Commissioner's decision.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for DIB on October 18, 2019, alleging a disability onset date of January 14, 2018. *See* AR 76-77. Plaintiff was 38 years old on the alleged onset date. AR 77. the day after his alleged onset date, Plaintiff underwent emergency heart surgery to repair a dissected (torn) aorta. AR 578, 581. He alleges that since his surgery he has been unable to work due to "aneurysms of his aorta, type A aortic dissection to the bilateral iliac[], chronic heart failure, chronic venous insufficiency, hypertension, hyperlipidemia, ascending aortic replacement, aortic arch replacement, pacemaker, kidney cysts, [and] gallstones." AR 78. The agency initially denied his application on March 6, 2020, and again on reconsideration on May 14, 2020. AR 86, 99.

Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was initially held on July 2, 2021. AR 50. Plaintiff technically failed to appear at this hearing because he was in the hospital due to chest pains without any privacy. AR 53. He listened by phone, his attorney appeared, and the ALJ proceeded to take testimony from vocational expert (VE) Jaye Stutz. AR 54-56. On October 8, 2021, ALJ Michaelsen held a second hearing where Plaintiff testified by phone, represented by his attorney. *See* AR 67. On November 4, 2021, the ALJ issued a decision denying Plaintiff's claim for benefits. AR 36-45. Plaintiff timely appealed the ALJ's decision to the Appeals Council, which denied his request for review on February 14, 2022. AR 1. Accordingly, the ALJ's decision became the final decision of the agency from which Plaintiff seeks review.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),

        416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

        The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

        As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2019. AR 38. Therefore, Plaintiff must establish disability—for a

period of twelve months or longer—on or before that date. The ALJ then conducted the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of January 14, 2018, through his date last insured of June 30, 2019 (the "relevant time period"). *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: "history of aortic dissection, histories of back and shoulder pain and mild neuropathy from injuries sustained in a December 2018 motor vehicle accident." AR 39. The ALJ found that Plaintiff's medically determinable mental impairments caused no more than mild limitation in any of the functional areas and were therefore non-severe. AR 39-40. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1. AR 40.

> The ALJ then determined that Plaintiff retained the RFC to
>
>> perform light work as defined in 20 CFR 404.1567(b) except was further limited to no more than occasional climbing of ropes, ladders or scaffolds. He would also need to avoid concentrated exposure to unprotected heights, moving machinery and similar hazards.

*Id.* At step four, the ALJ found that Plaintiff was able to perform his past work of parking lot attendant/valet and security guard. AR 44. Thus, the ALJ did not move to step five and instead concluded after step four that Plaintiff was not under a disability, as defined by the Act, at any time from January 14, 2018, the alleged onset date, through June 30, 2019, the date last insured. *Id.*

## DISCUSSION

Plaintiff contends the ALJ erred by (1) improperly evaluating the medical evidence; (2) improperly rejecting Plaintiff's subjective symptom testimony; and (3) failing to incorporate all the credible medical findings into the RFC. The Court addresses each alleged error in turn.

PAGE 6 – OPINION AND ORDER

**A. Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in finding Dr. Susan Moner's medical opinion persuasive and in finding Dr. Stephen Castro's medical opinion not persuasive. Plaintiff filed his application for benefits on October 18, 2019. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 404.1520c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. 20 C.F.R. § 404.1520c(c)(3). An ALJ is not, however, required to explain how he or she considered these secondary medical factors, unless

PAGE 7 – OPINION AND ORDER

he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. 20 C.F.R. § 404.1520c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. § 404.1520c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions . . . is likewise incompatible with the revised regulations. . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

**1. Dr. Susan Moner**

Plaintiff argues that the ALJ erroneously relied on the opinion of Dr. Moner, a non-examining agency medical consultant, who found that Plaintiff is capable of light work. Plaintiff argues that Dr. Moner's opinion is not supported by the medical record. In making his argument, Plaintiff points to parts of the record he believes Dr. Moner's opinion ignores. After reviewing the record, the Court finds the ALJ's conclusion that Dr. Moner's medical opinion was persuasive is supported by substantial evidence in the record.

After Plaintiff's heart surgery, for six weeks he remained in in-patient care, either at Oregon Health Sciences University or at a veteran's skilled nursing facility. AR 332, 470, 435, 538, 566. Starting in March 2018 through his date last insured, Plaintiff's health improved. On March 15, 2018, his medical provider noted that Plaintiff would continue to increase his activity. AR 431. On April 3, 2018, in his disability benefits questionnaire for the Veteran's Administration, Plaintiff's medical provider noted that Plaintiff's lower extremities showed

Case 3:22-cv-00501-SI    Document 19    Filed 07/26/23    Page 9 of 18

normal strength and that he was only using a walking-assistive device "occasionally." AR 965, 979. In September 2018, Plaintiff reported that he "walks about 5 days a week usually 3/4 of a mile at a time" at a "50 minute mile pace" but that he struggles with hills. AR 406. A scan of his heart in December 2018, showed "no need for concern." AR 398. In January 2019, his medical provider approved Plaintiff for work "with only the restriction of not lifting more than 40 lbs." AR 380. And in March 2019, Plaintiff told his medical provider that he just returned from a trip to Las Vegas, and he was able to walk several miles a day and keep up with his friends. AR 1053. Such medical evidence—as noted by the ALJ—substantially supports Dr. Moner's medical opinion that Plaintiff was capable of light work during the relevant period, and the ALJ did not err.

### 2. Dr. Stephen Castro

Plaintiff was referred to Dr. Castro, a neurologist, in 2020, and the medical record shows some decline in Plaintiff's health after the relevant period. Castro saw Plaintiff twice, once in November 2020 and again in July 2021, both after Plaintiff's date last insured. AR 1495, 2622. In a questionnaire, Dr. Castro opined that Plaintiff could lift only five pounds occasionally, one pound frequently, and could only stand or walk for ten minutes in one hour. AR 2662. Dr. Castro described Plaintiff's medical condition as "generalized weakness concerning for critical illness neuropathy vs spinal cord infarction with median and ulnar neuropathy." AR 2662.

The ALJ found Dr. Castro's opinion not persuasive because "as written it appears [Dr. Castro] is opining to the claimant's current abilities and limitations," and therefore, was not commenting on the relevant time period. AR 44. Plaintiff disagrees with the ALJ's assumption and argues that Dr. Castro's opinion and diagnosis of spinal infarction occurred and concerns the relevant time period.

From the Court's review of the record, it is not clear (1) to what time period Dr. Castro's opinion applies, and (2) whether Dr. Castro was able to diagnose Plaintiff with a spinal infarction at all. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Because the ALJ's interpretation of this aspect of Dr. Castro's opinion is a rational, it shall not be disturbed.

In his first appointment with Plaintiff, Dr. Castro noted that Plaintiff was referred to neurology because "he has little sensation to any sensory modality, light touch, temperature, vibration, pain, sense of self in space of the lower extremities" after his heart surgery. AR 1496. Dr. Castro went on to say that Plaintiff reported that he "actually had these symptoms *prior to going to the hospital for the initial diagnosis of dissection*. He reports that these sensory changes have been persistent and unchanging since onset." *Id.* (emphasis added). It is undisputed that Plaintiff was working until his dissection surgery. AR 226. Thus, if he was having these symptoms before his surgery, such symptoms did not keep him from working.

Given the symptoms, Dr. Castro noted that Plaintiff's symptoms are "most concerning for the Artery of Adamkiewicz, but could consider watershed infarcts of the spinal cord." AR 1502. An infarct of the spinal cord is "a stroke either within the spinal cord or the arteries that supply it." *Gurnett v. Colvin*, 213 F. Supp. 3d 1182, 1201 n.152 (D. Alaska 2016) (quoting http://www.ninds.nih.gov/disorders/spinal_infarction/spinal_infarction.htm (last visited Sept. 13, 2016)). There is no indication in Dr. Castro's notes when he thought the spinal infarction may have occurred or that it happened in connection with Plaintiff's heart surgery in January 2018.

On July 29, 2021, Dr. Castro saw Plaintiff again but, apparently due to equipment issues, was unable to conduct an MRI to confirm the infarction. AR 2628. Castro noted that some of

Plaintiff's symptoms led him to believe there had been an infarction, but Plaintiff had other test results that did not support the infarction diagnosis. AR 2628-29 ("The patient's history of symptoms with relative preservation of strength on exam without hyperreflexia makes PSA distribution infarct possible . . . The overall picture is complicated by the result of the EMG/NCS. We would expect some findings concerning for denervation on EMG if perhaps the corticospinal tracts were affected however this was not indicated. Nerve conduction studies too, maybe different as well in patients with spinal cord injury."). Dr. Castro's recommendation was for Plaintiff to continue his physical therapy to improve his strength, follow up with cardiology regarding his lightheadedness, and follow up with Dr. Castro in three months. AR 2629.

Plaintiff's briefing assumes that the infarction happened during Plaintiff's heart surgery. Dr. Castro noted that "[t]he description of onset of symptoms concurrent with dissection and endovascular repair also indicate possible etiology of spinal cord infarct." *Id.* But there is no evidence in the medical record that Dr. Castro conclusively diagnosed Plaintiff with a spinal infarction. Even in the questionnaire, Dr. Castro opines that Plaintiff's symptoms are "concerning for" a spinal cord infarction but he does not state one conclusively occurred. AR 2662. At most, Dr. Castro opines that spinal cord infarction is one possible diagnosis. Although Plaintiff would prefer a different interpretation of the record, the ALJ's interpretation of the medical evidence is rational, supported by substantial evidence, and, therefore, will not be disturbed by the Court.

## B. Subjective Symptom Testimony

### 1. Applicable Law

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated

PAGE 13 – OPINION AND ORDER

affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

### 2. Analysis

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's alleged symptoms, but not the extent Plaintiff claimed. AR 41. Thus, the second step of the analysis required the ALJ to offer clear and convincing reasons to reject Plaintiff's testimony. The ALJ gave Plaintiff's symptoms less weight because: (1) Plaintiff's testimony focused on his current symptoms, and not the relevant time period; and (2) his claimed limitations were inconsistent with the medical record. *Id.*

Plaintiff first argues that the ALJ failed to clearly explain what testimony he was rejecting with specific references to the medical record. An ALJ must specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009)). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a clamaint's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphasis in original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). Here, even though the ALJ could have been clearer, the court can ascertain the path he was following. *See Despinis v. Comm'r Soc. Sec. Admin.*, No. 2:16-cv-01373-HZ, 2017 WL 1927926, at *7 (D. Or. May 10, 2017) (finding the claimant's reliance on *Brown-Hunter* "unavailing," and stating that although "the

PAGE 14 – OPINION AND ORDER

ALJ's opinion could have more clearly stated each reason and how it served to discount Plaintiff's credibility, the Court is able to 'reasonable discern' the ALJ path") (citation omitted).

At the hearing, Plaintiff's attorney asked him what issues Plaintiff was "currently experiencing" that kept him from working. AR 71. Plaintiff answered that he has "massive chest pain, pain in [his] right should down through [his] right hand and fingers, sciatica, loss of feeling in legs, [and] weakness in the legs." *Id.* Plaintiff also testified that he uses a walker "every day." AR 72. The ALJ then urged Plaintiff's attorney to focus on the relevant time period instead of Plaintiff's current condition. AR 73.

After the ALJ's urging, Plaintiff's attorney asked if there was "any time since January 15th of 2018 to the present [where he] had not had to use a walker," to which Plaintiff said no. *Id.* Plaintiff then testified that he had difficulty using his hands since the day of his surgery, and that he had difficultly holding a pencil. *Id.* He further testified that he has experienced lightheadedness multiple times a day, every day, since his surgery in January 2018. AR 74.

The ALJ's conclusion that Plaintiff's testimony regarding his symptoms of "massive chest pain" and the weakness in his lower extremities was not related to the relevant time period is a clear and convincing reason to discount that testimony and supported by substantial evidence. The same is true for the ALJ's conclusion that Plaintiff's testimony regarding his use of an assistive walking device and physical capabilities was inconsistent with the medical record.

As explained above, from March 2018 through the date last insured, Plaintiff showed improvement in his physical capabilities. AR 431 (3/15/2018, Plaintiff reports he will "continue to increase activity"); 979 (4/3/2018, Plaintiff reports uses his crutches and cane "less than half the time" in the past year); 406 (9/4/2018, "[W]alks 5 days a week usually ¾ a mile at a time. Gets SOB at about half mile, walking '50 minute mile pace.' Struggles with hills."); 398

(12/12/2018, work up showed no need for concern at this time); 380 (1/3/2019, "he is okay to return to work with only the restriction of not lifting more than 40 lbs"); 1053 (5/15/2019, "feeling fairly well, walking about 45 minutes 5 days per week around his neighborhood, which is mostly flat. He rarely has to stop"; "just got back from [V]egas – able to walk several miles daily, keep up with friends"). Additionally, the evidence in the medical record directly contradicts Plaintiff's statement that he has used a walker "every day" since his surgery. AR 979 (Plaintiff reports he uses a "crutch/cane" "occasionally"); 980 (Plaintiff reports using a cane "less than half the time" in the past year). The ALJ's conclusion that Plaintiff's testimony was inconsistent with the medical record is supported by substantial evidence and was not in error.

## C.  RFC Assessment

Plaintiff argues that the ALJ failed to incorporate all the medical findings into the RFC. Specifically, Plaintiff argues that the ALJ failed to take into consideration Plaintiff's balance issues and his need for an assistive walking device.

### 1.  Applicable Standards

The RFC is the most a person can do, despite his physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

### 2. Analysis

On March 6, 2020, the Agency's reviewing doctor Roy Brown, found that during the relevant time period Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, that he could stand and walk about six hours in an eight-hour workday, that he could sit for more than six hours on a sustained basis, and that he had unlimited push and pull abilities, other than the already stated weight limitations. AR 83. For his postural limitations, Dr. Brown opined that Plaintiff was unlimited in his ability to climb ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, and that Plaintiff should only climb ladders, ropes, and scaffolds occasionally. AR 84.

As discussed above, on May 14, 2020, Dr. Moner agreed with Dr. Brown's assessment of Plaintiff. AR 96-97. Other than Dr. Castro's assessment, which the ALJ found not persuasive for the reasons already explained, no other medical opinions were offered regarding Plaintiff's limitations. The ALJ found that Plaintiff had the RFC to perform light work except that he could only do occasional climbing of ropes, ladders, or scaffolds, and he needs to avoid unprotected heights, moving machinery, and similar hazards. AR 40.

As explained throughout this opinion, from March 2018 through Plaintiff's last date insured, he showed improvement in his physical capabilities. It was reasonable for the ALJ to interpret that his balance issues and need for a walking assistive device were not affecting Plaintiff during the relevant period. Moreover, any lingering balance issues were captured by the limitation to avoid unprotected heights. Finally, to "find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 93-9p, at *7, *available at* 1996 WL 374185. Other than immediately after his surgery, there is no such evidence in the record.

Accordingly, the ALJ's formulation of the RFC captured all the medically credible evidence and was not in error.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled.

**IT IS SO ORDERED**.

DATED this 26th day of July, 2023.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge
